Matter of City of Albany, N.Y. (Albany Police Benevolent Assn.)
2026 NY Slip Op 03038
May 14, 2026
Appellate Division, Third Department
Corcoran, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of the Arbitration between City of Albany, New York, Respondent, and Albany Police Benevolent Association et al., Appellants. (And Another Related Proceeding.)

Decided and Entered:May 14, 2026
CV-24-2055
Calendar Date: March 23, 2026
Before: Clark, J.P., Ceresia, Fisher, Powers And Corcoran, JJ.

Gleason, Dunn, Walsh & O'Shea, Albany (Christopher M. Silva of counsel), for Albany Police Benevolent Association and others, appellants.
The Law Offices of John K. Grant, PC, Newburgh (John K. Grant of counsel), for Albany Police Supervisors Association and others, appellants.
Robert Magee, Corporation Counsel, Albany (Linda Keller of counsel), for respondent.

[*1]
Corcoran, J.
Appeal from a judgment of the Supreme Court (Christina Ryba, J.), entered November 24, 2024 in Albany County, which, in a combined proceeding pursuant to CPLR 7503 and action for declaratory judgment, among other things, (1) granted petitioner's application to permanently stay arbitration, and (2) declared Local Law F of 2022 valid.
In 2022, the Albany Common Council enacted Local Law No. 7-2022 (F-2022) (hereinafter Local Law F), which established a Department of Public Safety, empowered the mayor to appoint the department's Commissioner, and designated the Commissioner as "arbiter of any disciplinary determination that is appealed from within the Albany Police Department." In 2023, disciplinary charges were brought against respondents Leonard Gaspary, Joshua Sears and John Polec, all officers of the Albany Police Department, alleging misconduct in how they worked and accounted for extra-duty shifts for the city housing authority, and against respondent Lieutenant Devin Anderson alleging unprofessional conduct. The Albany police chief served them with notices of alleged violations of rules and general orders and proposed termination of the three officers and less severe sanctions against Anderson. The disciplinary notice offered each officer/lieutenant review via either arbitration under "the Labor Agreement" or a hearing under Civil Service Law §§ 75 and 76 as contemplated by the parties' respective collective bargaining agreements (hereinafter CBAs). The officers and lieutenant denied the disciplinary charges and the parties unsuccessfully sought to settle the dispute. Ultimately, the officers and lieutenant demanded arbitration with the Public Employment Relations Board (hereinafter PERB), citing applicable CBAs between the city and relevant labor unions. In response, petitioner referred the disciplinary proceedings to the Commissioner of Public Safety, bypassing the agreed-upon contractual process for disciplinary determinations.
Claiming that proceedings before the Commissioner of Public Safety, rather than PERB, were mandated by Local Law F, petitioner then commenced this hybrid CPLR article 75 proceeding to stay arbitration and declaratory judgment action to declare Local Law F valid. Respondents Albany Police Supervisors Association, Josiah Jones and Anderson (hereinafter collectively referred to as the PSA respondents) moved to dismiss the petition/complaint, contending that Local Law F was invalid due to conflict with the parties' CBAs, the existing city code and the Taylor Law (see Civil Service Law §§ 75, 76, 200 et seq.), impermissible vagueness and other reasons. Respondents Albany Police Benevolent Association, Michael Delano, Gaspary, Polec and Sears (hereinafter collectively referred to as the PBA respondents) answered and cross-petitioned to dismiss the petition/complaint, declare Local Law F invalid, and compel arbitration pursuant to CPLR 7503. They also contended that Local Law F conflicted with Civil Service Law §§ 75 and [*2]76 and violated Municipal Home Rule Law § 23 because it was enacted without a referendum. Supreme Court (1) granted the petition/complaint, finding Local Law F valid; (2) granted the petition to stay arbitration; (3) denied the PSA respondents' motion to dismiss; and (4) dismissed the PBA respondents' cross-petition. In brief, Supreme Court found that petitioner's uninterrupted history of local laws vesting authority over police discipline with city officials qualified it for the "grandfather[ ]" provisions of Civil Service Law § 76 (4), rendered police discipline a prohibited subject of collective bargaining and vitiated the CBA provisions governing arbitration of police discipline. Supreme Court did not reach the merits of the PSA respondents' alternative claim that Local Law F was void for vagueness and lacked due process procedures. The PSA respondents and PBA respondents appeal, and we modify.
The first issue on appeal is whether the parties must submit the pending police disciplinary charges to a mayoral appointee for determination under Local Law F of 2022, in apparent contravention of the Taylor Law, which generally commits public employee discipline to a forum and procedures established by statute or determined through collective bargaining (see Civil Service Law §§ 74, 75, 200 et seq.). "To put it simply, some municipalities have the right to bargain about police discipline, and some do not, and the difference depends upon whether there is applicable legislation specifically committing police discipline to the discretion of local officials in force" (Matter of Rochester Police Locust Club, Inc. v City of Rochester, 41 NY3d 156, 163 [2023] [internal quotation marks, brackets, ellipsis and citations omitted]). In a series of cases, the Court of Appeals has explained when police discipline determinations must be made by local officials and when they are subject to collective bargaining (see id.; Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d 109 [2017]; Matter of Town of Wallkill v Civil Serv. Empl. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 19 NY3d 1066 [2012]; Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d 563 [2006]; see also New York State Law Enforcement Officers Union, Council 82, AFSCME, AFL-CIO, Local 3471 v City of Geneva, N.Y., 75 Misc 3d 677 [Sup Ct, Ontario County 2022], affd 221 AD3d 1456 [4th Dept 2023], lv dismissed 42 NY3d 961 [2024]; City of Syracuse v Syracuse Police Benevolent Assn., Inc., 68 Misc 3d 412 [Sup Ct, Onondaga County 2020], affd 198 AD3d 1322 [4th Dept 2021]), lv granted 38 NY3d 904 [2022]). In general, Civil Service Law §§ 75 and 76 govern police disciplinary procedures, but Civil Service Law § 76 (4) " 'grandfather[s]' " a locality's preexisting law, enacted before 1958, that vests police discipline in local officials, such that nothing in Civil Service [*3]Law §§ 75 and 76 " 'shall be construed to repeal or modify any general, special or local' laws or charters" (Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 114, quoting Civil Service Law § 76 [4]; accord Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 573). Only when the municipality's legislation clearly applies Civil Service Law §§ 75 and 76 to police discipline may it be the proper subject of collective bargaining (see Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 573). Conversely, absent valid legislation specifically committing police discipline to local officials, the Taylor Law applies (see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 115).
The Court of Appeals has resolved the "tension between the strong and sweeping policy of the State to support collective bargaining under the Taylor Law and a competing policy — here, the policy favoring strong disciplinary authority for those in charge of police forces" (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 571 [internal quotation marks and citation omitted]) — by holding that strong local authority over police discipline prevails when an extant general, special or local law specifically commits police discipline to local officials' discretion (see Matter of Rochester Police Locust Club, Inc. v City of Rochester, 41 NY3d at 163; Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 571). When such legislation remains " 'in force,' " the municipality may not bargain about police discipline (Matter of Rochester Police Locust Club, Inc. v City of Rochester, 41 NY3d at 163-164, quoting Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 572). This rule has been applied to municipalities that claimed local control even after signing labor agreements that addressed police discipline (see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 115-116; Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 19 NY3d at 1069). Courts examine the legislative enactment for "plain and clear" evidence that a municipality deliberately ceded the right of local control over police discipline in favor of collective bargaining (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 573 [internal quotation marks and citations omitted]; see City of Syracuse v Syracuse Police Benevolent Assn., Inc., 68 Misc 3d at 423). In contrast, after a municipality with local control over police discipline enacts a local law clearly delegating police discipline [*4]to collective bargaining or the Civil Service Law, the Taylor Law prevails and the municipality may not through later legislation reclaim that authority for local police leaders (see Matter of Rochester Police Locust Club, Inc. v City of Rochester, 41 NY3d at 165). The parties dispute whether petitioner has a local law "in force" under which a local police official may mete out discipline or whether petitioner relinquished that authority in favor of collective bargaining through a series of changes to its local laws. We therefore examine the origin of petitioner's disciplinary authority and relevant changes to its laws after the Legislature adopted Civil Service Law procedures to discipline officers and created the right of public employees, including police officers, to bargain over discipline.
The parties agree that Albany was, and still is, a city of the second class. "In 1906, the [L]egislature enacted the Second Class Cities Law, which provided a standard charter for all cities of the second class" (Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 113). The statute prescribed procedures for police discipline, including that " 'the commissioner of public safety shall have cognizance, jurisdiction, supervision and control of the government, administration, disposition and discipline of the police department' " (id. [brackets omitted],quoting Second Class Cities Law § 131). The Legislature authorized the commissioner to make and enforce reasonable rules for the discipline of police officers and for the hearing, trial and determination of charges (see id.). The statute empowered the commissioner to punish any officer found guilty of charges following " 'due trial before said commissioner' " after affording the officer with reasonable notice of specific written charges (id. at 113-114, quoting Second Class Cities Law § 133; see also Second Class Cities Law §§ 135, 137). The statute also directed the commissioner to "make all appointments, promotions and changes of status of the officers and members of the police . . . department[ ] in accordance with the provisions of the civil service law of the state, except as otherwise provided herein" (Second Class Cities Law § 135). Thus, the Second Class Cities Law applied the Civil Service Law to police appointments, promotions and changes of status except disciplinary proceedings and trials.
In 1910, petitioner incorporated the foregoing provisions of the Second Class Cities Law into its municipal code. Throughout later changes to its local laws, petitioner consistently retained the essential structure under which the Civil Service Law applied to police officer appointments, promotions and changes of status except discipline. For instance, in 1936, petitioner ostensibly superseded the Second Class Cities Law when it enacted Local Law Nos. 1 and 2, which abolished the department of public safety, established in its place a department of police, and transferred the powers [*5]of the former public safety commissioner to the newly created police commissioner. Like the original Second Class Cities Law and the previous city code, Local Law No. 2 of 1936 empowered the police commissioner to conduct "due trial" of disciplinary charges and directed that appointments, promotions and changes of status shall be made in accordance with the Civil Service Law "except as otherwise provided herein."FN1
In 1958, the Legislature enacted Civil Service Law §§ 75 and 76, which generally govern discipline and removal of public employees, including police officers. According to Civil Service Law § 76 (4), nothing contained in §§ 75 or 76 "shall be construed to repeal or modify any general, special or local law or charter provision relating to the removal or suspension of officers." In 1967, the Legislature enacted the Public Employees' Fair Employment Act, commonly known as the Taylor Law (see L 1967, ch 392, adding Civil Service Law § 200 et seq.), creating PERB and authorizing it to establish procedures for collective bargaining and prevention of improper practices, among other things. Significantly, Local Law No. 1 of 1936 remained in force in 1958, thereby qualifying it for the "grandfather" protection afforded by Civil Service Law § 76 (4).
Petitioner's law governing police discipline remained essentially unchanged between 1936 and 1969, when petitioner enacted Local Law No. 1 of 1969, its first legislation relating to police discipline following the state's enactment of Civil Service Law §§ 75, 76, 200 et seq. Through Local Law No. 1 of 1969, petitioner created a department of public safety led by a commissioner empowered, like his predecessor, to preside over discipline of police officers. This local law also superseded prior iterations that conflicted with it, transferred police discipline powers from the obsolete police commissioner to the revived public safety commissioner, and retained the same directive that nondisciplinary "changes of status" shall be executed in accordance with the Civil Service Law. Between 1969 and 2001, petitioner adopted local laws alternating between a department of public safety, led by a commissioner, and a department of police, led by a chief. These enactments superseded prior inconsistent versions and transferred powers from commissioner to chief and back again. Notably, each local law, including Local Law No. 1 of 1969, Local Law No. 2 of 1986 and Local Law No. 1 of 2001 committed to the commissioner or chief of police the exclusive authority to control police discipline, including by presiding over trials of disciplinary charges; these powers remained vested in the chief of police through another local law enacted in 2013. The same local laws consistently directed that nondisciplinary changes of status, like appointments and promotions, shall follow Civil Service Law provisions. Finally, in 2022, the Common Council enacted Local Law F, which established a Department of Public Safety and created the [*6]position of Commissioner of Public Safety, who would serve as the "designated arbiter of any disciplinary determination that is appealed from within the Albany Police Department." This local law did not otherwise alter the structure of the police department or chief. Instead, it left intact the existing power of the police chief to preside over disciplinary trials pursuant to Code of the City of Albany § 42-6 (B) and created a new Commissioner of Public Safety to review determinations "appealed from within" the department.
Unlike RochesterandSyracuse, Albany never enacted legislation that plainly and clearly relinquished local control over police discipline in favor of Civil Service Law §§ 75 and 76 procedures or collective bargaining. Rather, as in Matter of Patrolmen's Benevolent Assn. of City of N.Y., Matter of Town of Wallkill and Matter of City of Schenectady, Albany's local laws consistently reserved police disciplinary powers for local officials; the city's shifting authority between a police chief and a commissioner is "irrelevant for the purpose of our decision in this case" because these alterations never disturbed municipal disciplinary authority (Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 115 n 1).FN2 Nothing in Albany's local laws resembles the explicit, dispositive legislative prerogative manifested in Matter of Rochester Police Locust Club, where that city enacted a local law in 1985 that specified that "the Civil Service Law" would thereafter govern police discipline (Matter of Rochester Police Locust Club, Inc. v City of Rochester, 41 NY3d at 164 [internal quotation marks and citation omitted]) or in City of Syracuse, where the 1960 city charter was amended to specifically commit police discipline to the ambit of the Civil Service Law (see City of Syracuse v Syracuse Police Benevolent Assn., Inc., 68 Misc 3d at 425; see also New York State Law Enforcement Officers Union, Council 82, AFSCME, AFL-CIO, Local 3471 v City of Geneva, N.Y., 75 Misc 3d at 690-692). As in PBA, Wallkill and Schenectady, Albany retained local control over police discipline through local laws that continued to vest disciplinary authority in local officials and never clearly committed that subject to the province of the Civil Service Law or collective bargaining. Simply put, petitioner's local laws "state the policy favoring management authority over police disciplinary matters in clear terms" (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 576).
Nor are we persuaded that petitioner waived local control by assigning a disciplinary role to an official who does not direct the day-to-day operation of the police department. Although the state policy favoring local control over police discipline was rooted in a desire to maintain control over the "quasi-military nature of a police force" (id.), other local officials, including town boards, may be vested with [*7]disciplinary authority, even where another executive official manages the department's daily operations, without offending public policy (see Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 19 NY3d at 1069; Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d at 574). Accordingly, the mere fact that Local Law F assigns a disciplinary review function to a mayoral appointee outside the police department's immediate chain of command does not constitute surrender of local control.
Next, we reject respondents' contention that Albany's bargaining history and course of conduct estop petitioner from arguing that police discipline constitutes a prohibited subject of bargaining. The parties seemingly agree that petitioner and police unions entered into CBAs that addressed police discipline even though petitioner now claims it was a prohibited topic of bargaining, as evidenced by their current contract under which officers could elect arbitration under their CBA or the Civil Service Law. Additionally, the police department's general orders acknowledge applicable CBAs and Civil Service Law provisions. However, a municipality's course of dealing, including entering into CBAs with police unions, does not judicially estop it from arguing it retains local control over police discipline under an extant "grandfathered" local law (see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 117; Matter of Town of Wallkill v Civil Serv. Empl. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 19 NY3d at 1069). Because petitioner retained local control over police discipline via local law, it could only commit discipline to collective bargaining by a legislative enactment, not by a series of contracts or department practices. To support their course-of-dealing argument, the PBA respondents cite our decisions sustaining police disciplinary determinations under Civil Service Law § 75 or after arbitration (see Matter of De Paulo [City of Albany], 72 AD2d 662 [3d Dept 1979], affd 49 NY2d 994 [1980]; Matter of Auburn Police Local 195, Council 82, Am. Fedn. of State, County & Mun. Empls., AFL-CIO v Helsby, 62 AD2d 12 [3d Dept 1978], affd 46 NY2d 1034 [1979]; Matter of Marsh v Hanley, 50 AD2d 687 [3d Dept 1975]). However, those decisions preceded Schenectady and Wallkill, where the Court of Appeals held that a municipality's past practice shall not abrogate an "in force" law committing police discipline to local officials (see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 117; Matter of Town of Wallkill v Civil Serv. Empl. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 19 NY3d at 1069). Thus, those cases are inapposite because the municipal employers [*8]there did not assert the same prohibition on collective bargaining.
Accordingly, we find that Supreme Court properly determined that police discipline is a prohibited subject of collective bargaining between these parties. In light of that conclusion, we next consider whether Supreme Court properly granted petitioner's application to permanently stay arbitration. To determine the parties' competing claims about the propriety of arbitration, we apply the two-step analysis set forth in Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807 (8 NY3d 513 [2007]). We must first determine whether any statutory, constitutional or public policy prohibition bars arbitration of the grievance (see id. at 519). "If there is a prohibition, our inquiry ends and an arbitrator cannot act" (id. [citations omitted]). "[A] court must stay arbitration where it can conclude, upon examining the parties' contract and the implicated statute on their face, that the granting of any relief would violate public policy" (id. [internal quotation marks and citation omitted]). Here, Supreme Court properly concluded that arbitration is barred by a preexisting local law that specifically committed police disciplinary authority to local officials. Notably, the only issue raised by the parties on the question of arbitrability relates to whether discipline was a prohibited or permissible subject of bargaining. Since a prohibition exists, our inquiry ends because granting any relief under the CBA would violate public policy.
We next address respondents' alternative procedural arguments that Local Law F is invalid, beginning with the PBA respondents' contention that enactment of Local Law F required a referendum. A referendum is required only where a local law abolished, transferred or curtailed the power of an elective officer (see Hoehmann v Town of Clarkstown, 40 NY3d 1, 6 [2023]; see also Municipal Home Rule Law § 23 [2] [f]). Local Law F did not curtail the mayor's power of appointment; rather, it created a department of public safety headed by a commissioner appointed by the mayor. As such, Local Law F operates consistently with the mayor's charter-based appointment authority, rather than in abrogation of it (see Mayor of City of N.Y. v Council of City of N.Y., 9 NY3d 23, 33 [2007]; New York State Law Enforcement Officers Union, Council 82, AFSCME, AFL-CIO, Local 3471 v City of Geneva, N.Y., 75 Misc 3d at 685-686).
Finally, we address the PSA respondents' argument that the city code, as amended by Local Law F, is void because it is vague, ambiguous and internally inconsistent.FN3 This argument is not foreclosed by our determination that discipline is a prohibited subject of bargaining. "[C]ivil as well as penal statutes can be tested for vagueness under the due process clause" (Matter of Kaur v New York State Urban Dev. Corp., 15 NY3d 235, 256 [2010] [internal quotation marks and citations [*9]omitted], cert denied 562 US 1108 [2010]; see e.g. Ahmed v Inc. Vil. of Scarsdale, 244 AD3d 913, 917 [2d Dept 2025]; Matter of Morrissey v Apostol, 75 AD3d 993, 996 [3d Dept 2010]). "Courts use a two-part test to determine whether a statute or regulation is unconstitutionally vague. First, to ensure that no person is punished for conduct not reasonably understood to be prohibited, the court must determine whether the statute in question is sufficiently definite to give a person of ordinary intelligence fair notice that the person's contemplated conduct is forbidden. Second, the court must determine whether the enactment provides officials with clear standards for enforcement so as to avoid resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application" (Matter of Independent Ins. Agents & Brokers of N.Y., Inc. v New York State Dept. of Fin. Servs., 39 NY3d 56, 64 [2022] [internal quotation marks, brackets and citations omitted]; see Matter of Town of Copake v New York State Off. of Renewable Energy Siting, 216 AD3d 93, 106 [3d Dept 2023], appeal dismissed 41 NY3d 990 [2024]; Matter of Carpinelli v City of Kingston, 175 AD2d 509, 510 [3d Dept 1991]). Petitioner did not specifically address this argument in its brief nor cite any evidence that Local Law F has been materially amended or augmented by another enactment, such that we analyze only the city code as amended by this new local law.
Local Law F designates the Commissioner of Public Safety as "arbiter of any disciplinary determination that is appealed from within the Albany Police Department" and empowers him or her to "hold hearings, and issue final binding discipline in such matters." However, the existing city code still empowers the chief of police to discipline officers in the first instance for enumerated misconduct after giving notice of the specific charges in writing and upon due trial in the "manner prescribed by law and the rules and regulations of the [d]epartment" (Code of the City of Albany § 42-6 [B]). Though Local Law F contemplates that the Commissioner of Public Safety shall have other powers and duties as prescribed by local law or ordinance, the record is bereft of any evidence of subsequent legislation clarifying the Commissioner's powers or duties or defining when and how the commissioner conducts hearings or issues final decisions (compare Matter of Town of Tonawanda Police Club, Inc. v Town of Tonawanda, 194 AD3d 1462, 1463 [4th Dept 2021]). Because the police chief's authority to conduct disciplinary trials was unchanged by Local Law F, the text suggests that the Commissioner of Public Safety performs appellate review of the police chief's decisions. The parties previously resolved police discipline disputes through methods with clearly defined rights, responsibilities and procedures. However, unlike the parties' CBAs or Civil Service Law §§ 75 and 76, Local Law F does not define any procedures, deadlines, standards [*10]for review, criteria for determining whether or how a hearing will be conducted, or other explicit standards to prevent ad hoc, subjective application. The ambiguous impact of Local Law F on the existing structure is exemplified by petitioner's initial invitation to resolve the dispute by arbitration under the CBA or by a hearing under Civil Service Law §§ 75 and 76 before petitioner referred the pending disciplinary charges directly to the Commissioner for a "pre-hearing conference." Under these circumstances, we grant that part of the cross-petition by the PSA respondents that seeks to declare Local Law F void for vagueness. To be clear, invalidation of Local Law F on this basis does not render police discipline a negotiable subject; rather, the parties remain governed by the local law "in force," which continues to commit police discipline to local officials (see Carver v County of Nassau, 135 AD3d 888, 889 [2d Dept 2016], lv dismissed & denied 27 NY3d 1032 [2016]), but petitioner must articulate procedures which afford the officers due process (see Matter of Nassau County Sheriff's Corr. Officers Benevolent Assn., Inc. v Nassau County,137 AD3d 1145, 1147 [2d Dept 2016]). For the reasons explained above, petitioner was authorized to devise a procedure for appellate review by the newly created Commissioner of Public Safety utilizing procedures that withstand due process scrutiny. However, Local Law F, in its present form, lacks sufficient particulars to guarantee objective, predictable administration of the disciplinary appeals process.
Accordingly, we agree with Supreme Court that petitioner demonstrated its uninterrupted retention of local control over police discipline through a "grandfathered" local law "in force," such that police discipline constitutes a prohibited subject of collective bargaining until and unless petitioner plainly commits it to bargaining by another enactment. Supreme Court therefore properly granted a permanent stay of arbitration of the pending disciplinary charges under CPLR 7503 (b). However, because we find that Local Law F is impermissibly ambiguous, it was error to deny the PSA respondents' motion to dismiss, which we treat as a request for a declaration in its favor, on the limited basis that Local Law F is void for vagueness.
Clark, J.P., Ceresia, Fisher and Powers, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as found Local Law F of 2022 valid and denied that part of the motion of respondents Albany Police Supervisors Association, Josiah Jones and Devin Anderson seeking a declaration that Local Law F of 2022 is unconstitutionally vague; it is declared that Local Law F of 2022 is void for vagueness; and, as so modified, affirmed.

Footnotes

Footnote 1
We reject respondents' proposed statutory construction that disciplinary terminations constitute "changes of status." Each time the drafters composed an enactment, they defined certain procedures for "appointments, promotions and changes of status" while simultaneously prescribing different procedures for "discipline" in the same law. Respondents thus overlook basic tenets of statutory construction (seeMatter of Perlbinder Holdings, LLC v Srinivasan, 27 NY3d 1, 9 [2016], citing McKinney's Cons Laws of NY, Book 1, Statutes § 238; see also General Construction Law § 95).

Footnote 2
This conclusion comports with Civil Service Law § 76 (4), which expressly provides that nothing in Civil Service Law §§ 75 or 76 shall be construed to repeal or modify local laws relating to police discipline. Civil Service Law § 76 (4) thus reflects a legislative judgment that the general policy favoring collective bargaining does not displace a local law that commits police discipline to local officials (see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d at 114).

Footnote 3
Because no questions of fact are presented by the controversy, we treat this motion to dismiss for failure to state a cause of action as a motion for a declaration in respondents' favor (see 306 Wall St. Owners, LLC v City of Kingston, 241 AD3d 1692, 1694 [3d Dept 2025]; Grand S. Point, LLC v Bassett, 230 AD3d 49, 58-59 [3d Dept 2024], appeal dismissed 42 NY3d 1025 [2024], lv denied 43 NY3d 907 [2025]).